IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAI`I

| | |
|---|---|
| CHRISTOPHER SLAVICK, #A0765881,<br><br>Petitioner,<br><br>vs.<br><br>FRANCIS SEQUEIRA,<br><br>Respondent. | CIVIL NO. 15-00424 DKW-KJM<br><br>**ORDER (1) ADOPTING THE FINDINGS AND RECOMMENDATION TO DENY PETITION FOR WRIT OF HABEAS CORPUS AND (2) DENYING CERTIFICATE OF APPEALABILITY** |

**ORDER (1) ADOPTING THE FINDINGS AND RECOMMENDATION TO DENY PETITION FOR WRIT OF HABEAS CORPUS AND (2) DENYING <u>CERTIFICATE OF APPEALABILITY</u>**

This matter is before the Court on objections to the Magistrate Judge's July 28, 2016 Findings and Recommendation ("F&R") to deny Christopher Slavick's Section 2254 Petition. Slavick objects to the F&R's determination that his conviction did not violate his constitutional right to a speedy trial under the Sixth Amendment or his right to be free from double jeopardy under the Fifth Amendment.

Because, on *de novo* review, this Court agrees that Slavick's Fifth and Sixth Amendment rights were not violated by the state trial court, the Court ADOPTS

the F&R, and DENIES the requested writ of habeas corpus. The Court also DENIES a certificate of appealability.[1]

## BACKGROUND

The F&R provides a thorough discussion of the factual basis underlying Slavick's conviction and the subsequent procedural history of his habeas petition and appeal. In short, on October 28, 2003, after arriving at the Honolulu International Airport from Thailand, law enforcement arrested Slavick for Promoting a Harmful Drug in the First Degree after they discovered two bottles of Danabol steroids in his luggage. *See* Hawaii Judiciary Electronic Filing and Service System ("JEFS") CAAP-13-0000701 Transcript of Proceedings ("Tr.") 02/13/13. Slavick was subsequently released pending further investigation. JEFS Tr. 10/9/12 at 27.

On August 5, 2004, an Oahu Grand Jury indicted Slavick on a charge of Promoting a Harmful Drug in the First Degree. Dkt. No. 15-10. The Circuit Court of the First Circuit for the State of Hawaii ("Circuit Court") issued a bench warrant later that day. JEFS CAAP-13-0000701 Record on Appeal ("ROA") Part 1 at 62. From August 9, 2004 to December 16, 2010, law enforcement attempted to locate Slavick by checking known addresses, searching criminal history databases, and

---

[1] Pursuant to District of Hawaii Local Rule 7.2(d), the Court finds these matters suitable for disposition without a hearing.

examining motor vehicle and driver's license information. *See* Dkt. Nos. 15-4, 15-8, 15-11, 15-14. This more than six-year search culminated on December 16, 2010 when the Honolulu Police Department arrested Slavick in Wahiawa, Hawaii. Dkt. Nos. 15-11, 15-14. Shortly thereafter, on January 6, 2011, Slavick was arraigned. *See* Dkt. No. 15-11.

Prior to trial, Slavick moved to dismiss the charge, alleging that the State's failure to bring his case to trial within 180 days of his arrest violated Hawaii Rule of Penal Procedure 48. Dkt. No. 15-12. The Circuit Court denied Slavick's motion because "the reasons for delay occurred with [Slavick's] consent or at his request or because of his own conduct," and because he had alleged but had not shown "prejudice because of the delay." Dkt. No. 15-11 at 12-13.

Slavick's first trial began on October 10, 2012, but ended in a mistrial arising from juror misconduct. *See* JEFS Trs. 10/10/12 at 117; Dkt. No. 15-9 at 38. During deliberations, the Circuit Court received a jury note, Communication No. 3, stating that "[a] juror had conducted independent research w[ith] respect to Danabol DS and has shared his research w[ith] his fellow jurors inconsistent w[ith] [jury instruction] 27; however a poll of the jury indicated that it did not impact their current decision." *See* Dkt. No. 15-9 at 11-12; JEFS ROA Part 1 at 498. The Circuit Court, with the agreement of both parties, initiated questioning of individual jurors regarding the extent of any impact of the extraneous information

3

on jury deliberations.  Dkt. No. 15-9 at 12-13.  The Circuit Court also permitted counsel to question the jurors.  *Id.*  After the foreperson and three other jurors had been individually questioned, the Circuit Court declared a mistrial based on manifest necessity, concluding that the extraneous information had "impacted their ability to deliberate with one another and to change their minds and to come to a decision if that's at all possible."  *Id.* at 13-38.

The second trial began on February 12, 2013, and concluded with the jury finding Slavick guilty of Promoting a Harmful Drug in the First Degree.  *See* JEFS Trs. 02/12/2013, 02/15/2013 at 136.  The Circuit Court sentenced Slavick to a 20-year term of imprisonment.  JEFS ROA Part 1 at 850.

Slavick appealed on double jeopardy and speedy trial grounds.  Dkt. No. 15-1.  The Intermediate Court of Appeals of the State of Hawaii ("ICA") rejected Slavick's arguments and affirmed his conviction.  Dkt. No. 15-4.  The ICA held in relevant part: (1) "the Circuit Court did not err when it found a manifest necessity to declare a mistrial due to the juror's serious misconduct, which irreversibly impacted the jury's deliberations and prejudiced the defendant"; and (2) the Circuit Court did not err when it concluded that Slavick's right to a speedy trial was not violated.  *Id.*  The Supreme Court of the State of Hawaii denied Slavick's application for writ of certiorari.  Dkt. Nos. 15-5, 15-7.

Slavick filed a petition for writ of habeas corpus under 28 U.S.C. § 2254, which is presently before this Court. The Petition raises two grounds for relief: (1) that Slavick's right to a speedy trial under the Sixth Amendment was violated; and (2) that Slavick's right to be free from double jeopardy under the Fifth Amendment was violated. The Magistrate Judge analyzed each ground, concluded that they both were without merit, and recommended that the Petition be denied. Dkt. No. 51. Slavick objected to the Magistrate Judge's recommendations on both grounds.[2] Dkt. No. 52.

## STANDARD OF REVIEW

When a party objects to a magistrate judge's findings or recommendations, the district court must review de novo those portions to which the objections are made. *United States v. Raddatz*, 447 U.S. 667, 673 (1980); Fed. R. Civ. P. 72(b). The district court may accept, reject, or modify, in whole or in part, the findings and recommendations made by the magistrate judge. *Raddatz*, 447 U.S. at 673–74. De novo review means the court must consider the matter anew, as if it had not

---

[2] In addition, Slavick appears to challenge the conditions of his confinement at the Halawa Correctional Facility ("HCF") and claims that certain individuals at HCF have retaliated against him. Dkt. No. 52 at 1-2. As previously instructed by the Court, Slavick "may not use his Petition for Writ of Habeas Corpus as a vehicle to challenge the conditions of confinement." Dkt. No. 21 (citing *Pac. Radiation Oncology, LLC v. Queens Med. Ctr.*, 810 F.3d 631, 638 (9th Cir. 2015)).
    Slavick also objects to the purported involvement of U.S. District Court Judge J. Michael Seabright in the instant case. Dkt. No. 52 at 2-3. Judge Seabright performed the ministerial task of reassigning this case from Magistrate Judge Barry Kurren to Magistrate Judge Kenneth Mansfield when the former retired. That reassignment has no bearing on the merits of Slavick's Petition.

been heard before and as if no decision previously had been rendered. *See Ness v. Comm'r*, 954 F.2d 1495, 1497 (9th Cir. 1992). The district court need not hold a de novo hearing; however, it is the court's obligation to arrive at its own independent conclusion about those portions of the magistrate judge's findings or recommendation to which a party objects. *United States v. Remsing*, 874 F.2d 614, 617 (9th Cir.1989).

## **DISCUSSION**

The Antiterrorism and Effective Death Penalty Act ("AEDPA") mandates that a federal court may not grant a writ of habeas corpus under 28 U.S.C. § 2254 based on any claim that was adjudicated on the merits by a state court unless the state court decision was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(1)–(2).

"A state-court decision will certainly be contrary to [the Supreme Court's] clearly established precedent if the state court applies a rule that contradicts the governing law set forth in [the Supreme Court's] cases." *Williams v. Taylor*, 529 U.S. 362, 405 (2000). "A state-court decision will also be contrary to th[e Supreme] Court's clearly established precedent if the state court confronts a

set of facts that are materially indistinguishable from a decision of th[e Supreme] Court and nevertheless arrives at a result different from [Supreme Court] precedent." *Id.* at 406. "[A] determination of a factual issue made by a State court shall be presumed to be correct . . . . [and t]he applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1).

In conducting this review, the Court looks to the "last reasoned decision" by a state court addressing the issues at hand, *Miles v. Ryan*, 713 F.3d 477, 486 (9th Cir. 2012), which, in this case, is the ICA's July 24, 2014 decision affirming the Circuit Court's judgment on direct appeal. Dkt. No. 15-4. The Court concludes that Slavick has failed to show that the ICA's decision was contrary to or involved an unreasonable application of Supreme Court precedent. Nor has he shown the incorrectness of any factual determination made by the ICA. Consequently, the Court adopts the Magistrate Judge's recommendation to deny Slavick's petition. Each of Slavick's grounds for habeas relief is discussed below.

I. **<u>Speedy Trial</u>**

The Sixth Amendment guarantees that criminal defendants "shall enjoy the rights to a speedy and public trial . . . ." U.S. Const. amend. VI. To determine whether a defendant's Sixth Amendment speedy trial right has been violated, courts balance the following four factors: "[l]ength of delay, the reason for the

delay, the defendant's assertion of his right, and prejudice to the defendant." *Barker v. Wingo*, 407 U.S. 514, 530 (1972).  The Magistrate Judge considered each of these factors and determined, on balance, that the ICA's conclusion that Slavick was not denied his constitutional right to a speedy trial was not contrary to clearly established federal law.  In his objections, Slavick appears to primarily focus on the Magistrate Judge's analysis of the second factor: the reason for the delay.  As set forth below, even on *de novo* review, the Court reaches the same conclusion as the Magistrate Judge.

    A.    **<u>Length of Delay</u>**

The length of the delay is the "triggering mechanism" for the remainder of the speedy trial right inquiry.  Without a delay that is prima facie prejudicial, a defendant lacks a Sixth Amendment claim.  *See, e.g.*, *U.S. v. Corona–Verbera*, 509 F.3d 1105, 1114 (9th Cir. 2007).  "[C]ourts have generally found postaccusation delay 'presumptively prejudicial' at least as it approaches one year." *Dogget v. United States*, 505 U.S. 647, 652 n.1 (1992) (citations omitted).  Here, the delay between Slavick's indictment and arrest exceeded six years, warranting an inquiry into the other three factors.  *United States v. Mendoza*, 530 F.3d 758, 762 (9th Cir. 2008).

B.     **Reason for Delay**

The second factor, reason for the delay, recognizes that the government has "some obligation" to pursue a defendant and bring him to trial. *United States v. Sandoval*, 990 F.2d 481, 485 (9th Cir. 1993). "If the government fulfills that obligation by pursuing a defendant with reasonable diligence, the defendant does not have a speedy trial claim. On the other hand, if the government is negligent in pursuing the defendant, prejudice is presumed." *Mendoza*, 530 F.3d at 763 (citation omitted). A state court's determination of speedy trial diligence is afforded considerable deference. *See Doggett*, 505 U.S. at 652 ("[W]e review trial court determinations of negligence with considerable deference[.]"); 28 U.S.C. § 2254(d)(2); C. Wright & A. Miller, Fed. Prac. & Proc. Civ. § 2590 (2016)). As set forth below, the Court finds that this factor weighs in favor of the State because, on the whole, the State did not act negligently in pursuing Slavick and bringing him to trial.

The Magistrate Judge's F&R summarizes "the following good-faith and appropriate efforts to locate Slavick":

> (1) State Deputy Sheriff Reed personally checked three locations for Slavick: a known Hawaii address for Slavick at "277 Ohua Avenue," a location called "Care-van" where Slavick had been known to visit, and the Institute for Human Services; *see* ECF No. 15-14
>
> (2) On or around August 9, 2004, Reed conducted a criminal history database search of Slavick; *Id.*

>   (3) On September 1, 2004, Reed spoke with the U.S. Customs Office in an attempt to determine Slavick's whereabouts. Id. The authorities there informed Reed that Slavick had departed for Thailand in June 2004 and that the office would inform Reed if Slavick sought to re-enter the U.S. through Hawaii; *Id.*
>
>   (4) Subsequent to these initial efforts, Reed made other attempts to locate Slavick. On October 11, 2004, Reed conducted further computer and database checks; *Id.*
>
>   (5) On January 18, 2007, Reed searched a new database called ATXP which turned up one Colorado address later found to be invalid; *Id.*
>
>   (6) On September 8, 2008, Deputy Sheriff Machado took various measures to locate Slavick including "re-examining" criminal history databases, motor vehicle and driver's license information, and police reports; *Id.*
>
>   (7) Machado repeated his database searches on July 30, 2009, November 11, 2009, March 10, 2010, August 26, 2010, and November 24, 2010, but found nothing indicating that Slavick had returned to Hawaii; *Id.*
>
>   (8) Also on November 24, 2010, Machado used a U.S. Marshals Task Force database and found possible addresses for Slavick in Colorado, California, Nevada, Georgia, and South Carolina.  *Id.*

Dkt. No. 51 at 20-22.

Slavick claims that the F&R is "inaccurate" because it states that Deputy Reed "personally checked three locations for Slavick," *id.* at 20, "when the Sheriff's log and testimony irrefutably verify one of those was only by phone and illogical/negative while another was verified as invalid . . . ." Dkt. No. 52 at 3.

10

Having independently reviewed the record, the Court finds no inaccuracies in the Magistrate Judge's summary of the efforts that the State made to locate Slavick. *See, e.g.*, Dkt. No. 15-8 (copy of the October 9, 2012 transcript); Dkt. No. 15-14 (copy of the Warrant Information/Sheriff's Log). Whether in person or by phone, the record reflects that Deputy Reed checked three locations for Slavick on August 9, 2004. *See id.* That one of the three checks may have been by phone is of little, if any, consequence. The ICA found, and Slavick does not dispute, that he was not in Hawaii between August 5, 2004 until at least late November 2010. Dkt. No. 15-4 at 7. Thus, the Magistrate Judge correctly pointed out that any further attempts to locate Slavick in Hawaii during this period would have been futile. Dkt. No. 51 at 24; *see also United States v. Moreno*, 789 F.3d 72, 80 (2d Cir. 2015) (noting that "delay cannot be attributable to a failure of diligence if diligence would have been futile").

Slavick also claims that the Magistrate Judge incorrectly characterized the interval between each of the State's many attempts to find Slavick as "several months" when "the Sheriff's log verifies it was YEARS that passed without any efforts." Dkt. No. 52 at 3. More specifically, Slavick contends that there was a "lack of explanation" for the interval between January 2007 and September 2008. *Id.* at 3-4. The Court acknowledges this apparent gap in the Sheriff's log, but nevertheless agrees with the ICA's conclusion that the State took numerous and

11

appropriate measures amounting to reasonable diligence.  The State had pursued every local lead or contact for Slavick until U.S. Customs informed the State that Slavick had left the country and that it would inform the State if Slavick attempted to re-enter the United States through Hawaii.  *See* Dkt. No. 15-4 at 9.  Moreover, as previously pointed out, Slavick was not in Hawaii between August 5, 2004 and late November 2010, and thus, efforts to locate Slavick in Hawaii between January 2007 and September 2008 would have been futile.

In sum, this factor weighs in favor of the State and against dismissal.

### C.   Assertion of Right to Speedy Trial

Slavick does not challenge the Magistrate Judge's determination that this factor does not favor either party, and the Court finds no reason to do so either.

### D.   Prejudice to Slavick

Given the Court's determination that the State's search was reasonably diligent, Slavick must show actual prejudice to prevail.  "[A]ctual prejudice can be shown in three ways: oppressive pretrial incarceration, anxiety and concern of the accused, and the possibility that the accused's defense will be impaired." *United States v. Beamon*, 992 F.2d 1009, 1014 (9th Cir. 1993) (citing *Doggett*, 505 U.S. at 654).

The Magistrate Judge provided a thorough analysis of this last factor, and ultimately weighed it in favor of the State because Slavick presented "only the

possibility of prejudice, and this mere possibility is insufficient under the circumstances to establish a Sixth Amendment violation." Dkt. No. 51 at 27-28 (citing *United States v. Sears, Roebuck and Co.*, 877 F.2d 734, 740 (9th Cir. 1989); *United States v. Loud Hawk*, 474 U.S. 302, 315 (1986)). Slavick does not appear to challenge this determination, and the Court finds no reason to either.

After balancing the factors, the Court reaches the same conclusion as the Magistrate Judge: the ICA's conclusion that Slavick was not denied his constitutional right to a speedy trial was not contrary to clearly established federal law. *See* DKt. No. 51 at 28. Accordingly, the Court overrules Slavick's objections and adopts the Magistrate Judge's recommendation that Slavick's speedy trial claim be denied with prejudice.

## II. Double Jeopardy

In his objections to the F&R, Slavick argues that his conviction constituted double jeopardy because the Circuit Court "falsified reasons" for *sua sponte* declaring a mistrial based on "manifest necessity." Dkt. No. 52 at 3. Slavick further argues that this alleged falsification was "completely ignored" by the Magistrate Judge. *Id*. Having carefully reviewed the record, the Court finds no merit to Slavick's objection.[3]

---

[3] In addition, Slavick appears to argue that the State employed a new theory, presented new evidence, and called a new witness on retrial, and that these actions violated the Double Jeopardy clause. Dkt. No. 52 at 4-5. The Court refrains from addressing this claim because Slavick did

13

The Double Jeopardy clause of the Fifth Amendment to the United States Constitution protects a defendant from being tried multiple times for the same criminal offense. Jeopardy attaches when the jury is empaneled and sworn. *Crist v. Bretz*, 437 U.S. 28, 35 (1978). When a trial is terminated without the consent of the defendant, the test for lifting the double jeopardy bar to a second trial is the "manifest necessity" standard. *Arizona v. Washington*, 434 U.S. 497, 504-05 (1978). Manifest necessity exists when "the ends of public justice would not be served by a continuation of the [trial] proceedings." *United States v. Jorn*, 400 U.S. 470, 485 (1971).

In reviewing the Circuit Court's decision regarding the existence of manifest necessity, the Court is cognizant that "[t]he trial judge is uniquely qualified to appraise the probable effect of information on the jury, the materiality of the extraneous material, and its prejudicial nature. He or she observes the jurors throughout the trial, is aware of the defenses asserted, and has heard the evidence." *United States v. Bagnariol*, 665 F.2d 877, 885 (9th Cir. 1981). As such, the Circuit

---

not properly exhaust it. *Anderson v. Harless*, 459 U.S. 4, 6 (1982) (stating that a claim is "fairly presented" if the petitioner described the operative facts and the federal legal theory on which his claim is based so that the state courts have a "fair opportunity" to apply controlling legal principles to the facts bearing upon his constitutional claim) (citing *Picard v. Connor*, 404 U.S. 270, 276-277 (1971)). Although Slavick's appeal to the ICA raised the issue of Double Jeopardy, his argument focused exclusively on the Circuit Court allegedly committing reversible error when it *sua sponte* found manifest necessity to declare a mistrial without Slavick's consent. *See* Dkt. No. 15-1.

Court's "conclusion about the effect of the alleged juror misconduct deserves substantial weight." *Id.*

In the instant case, Slavick's explanation for his possession of the two bottles of Danabol, which contained a steroid known as methandrostenolone or methandienone, was that he had bought them at a pharmacy in Thailand when he was sick and had diarrhea; that he did not know the drug was a controlled substance; and that his wife had packed the bottles of pills without his knowledge. *See* Dkt. No. 15-4 at 3-4. In the midst of deliberations, the Circuit Court received Communication No. 3 from the jury, which stated that a juror had conducted independent research on Danabol DS and had shared his research with the other jurors. Dkt. No. 15-9 at 12-13. Although the note further stated that "a poll of the jury indicated that it did not impact their current decision[,]" the Circuit Court and the parties agreed to individually question the jurors with respect to Communication No. 3. Dkt. No. 15-9 at 12-13. After questioning four jurors, the Circuit Court determined that it had "heard enough" and concluded that the extraneous information "had an impact on the deliberations." Dkt. No. 15-9 at 37-38. Slavick contends, without citing any support, that the Circuit Court "plainly falsified reasons" for its decision. Dkt. No. 52 at 3. This contention is simply not supported by the record.

Based on the jurors' testimony, it is evident that the extraneous information relating to Danabol DS "irreversibly impacted the jury's deliberations and prejudiced the defendant," as the ICA concluded. Dkt. No. 15-4 at 5-6. The foreperson testified that Juror No. 9 had shared what he had discovered on the internet with the other jurors, and that Juror No. 9 "did go into some detail about what he discovered . . . ." Dkt. No. 15-9 at 14-16. Although the foreperson "tried not to listen," he acknowledged that other jurors had questions for Juror No. 9 and that a discussion ensued. *Id.* at 16. As a result of that discussion, the information "may have become influential with respect to whether or not they could go one way or the other." *Id.* at 17. Juror No. 2 testified that the juror research involved Danabol DS being "specifically meant for body building, that steroid," but felt that he could set aside that information and not let it influence his decision. *Id.* at 22-23. Juror No. 3 testified with specificity about what Juror No. 9 had disclosed, which included information that the substance at issue "is a steroid and it's not something that could be used to be taken with an illness, or it wouldn't be like the type of medication that you would prescribe[ ] for the type of illness that was presented to us for the case. And that it is something that body builders use . . . to gain strength, mass and, I guess, to make themselves bigger." *Id.* at 25. Juror No. 4's testimony corroborated that of Juror No. 3, and she further testified that the information "would make it harder to change [her] mind." *Id.* at 33-37.

16

In sum, these comments demonstrate that, after the jury had been exposed to the extraneous information, "the interests of public justice would not be served by a continuation of the [trial] proceedings[,]" *Jorn*, 400 U.S. at 485, and that manifest necessity existed to declare a mistrial.[4] Because the mistrial was supported by a valid determination of manifest necessity, the second trial that resulted in Slavick's conviction did not violate the Double Jeopardy clause. As such, the ICA's decision was not "contrary to, or involved an unreasonable application of, clearly established federal law." 28 U.S.C. § 2254(d)(1). The Court ADOPTS the Magistrate Judge's recommendation that Slavick's double jeopardy claim be denied with prejudice.

## III. Certificate of Appealability

An appeal may not be taken in a § 2254 habeas proceeding "unless a circuit justice or judge issues a certificate of appealability." 28 U.S.C. § 2253(c)(1)(A). To obtain a certificate of appealability, the petitioner must make a "substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). When, as here, a district court denies a § 2254 petition on the merits, a petitioner, to satisfy the requirements of § 2253(c)(2), "must demonstrate that reasonable jurists would

---

[4] The Magistrate Judge also agreed with the ICA's determination that the Circuit Court adequately considered the alternatives to declaring a mistrial. Dkt. No. 51 at 35-38. Slavick did not object to this portion of the F&R, and even if he did, the Court would reach the same conclusion as the Magistrate Judge under a de novo review. Alternatives to a mistrial would not have been reasonable under the circumstances because the extraneous information had irreversibly impacted the jury's deliberations and prejudiced the defendant.

find the district court's assessment of the constitutional claims debatable or wrong." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000).

No reasonable jurist would find this Court's assessment of the merits of Slavick's claims debatable or wrong. The Court therefore declines to grant a certificate of appealability.

## CONCLUSION

For the foregoing reasons, the Court ADOPTS the Magistrate Judge's Findings and Recommendation to DENY Slavick's § 2254 Petition for Writ of Habeas Corpus.

IT IS SO ORDERED.

DATED: September 23, 2016 at Honolulu, Hawai'i.



Derrick K. Watson
United States District Judge

---

Slavick v. Sequeira; CV 15-00424 DKW-KJM; **ORDER (1) ADOPTING THE FINDINGS AND RECOMMENDATION TO DENY PETITION FOR WRIT OF HABEAS CORPUS AND (2) DENYING CERTIFICATE OF APPEALABILITY**